IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JAMES B. MASSENGILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:05cv0028 |
| v. ) | |
| ) | Judge Thomas A. Wiseman, Jr. |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiff James B. Massengill's motion for judgment on the administrative record (Doc No. 12), filed along with a supporting brief (Doc. No. 13), seeking reversal of the Commissioner of Social Security's denial of his application for disability insurance benefits and social security income on the basis that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). The Commissioner of Social Security ("Commissioner" or "Defendant") filed a response opposing Plaintiff's motion. (Doc. No. 15.) Plaintiff then filed a reply brief. (Doc. No. 17.)

Upon review of the Administrative Record ("AR") as a whole, the Court finds that the Commissioner's decision denying benefits is supported by substantial evidence. Accordingly, the Commissioner's decision denying benefits will be affirmed.

**I.    INTRODUCTION**

Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner, finding that Plaintiff was not disabled and denying his petition for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under Sections 216(I), 223, and 1614(a)(3)(A), respectively, of the Act.

Plaintiff filed his current applications for DIB and SSI on September 30, 2002, alleging disability since November 1, 2000, due to back, right ankle and diabetic disorders. (AR 132-34, 359-61.) Plaintiff's applications were denied initially and upon reconsideration. (AR 88, 90, 340, 341.) Thereupon, Plaintiff

requested a hearing before an Administrative Law Judge ("ALJ"), which was initially set for February 4, 2004 but then postponed to provide Plaintiff time to obtain counsel. (AR 87.) After Plaintiff obtained counsel, a hearing was conducted before ALJ Robert L. Erwin on July 14, 2004, in Cookeville, Tennessee. (AR 52-80.) On September 4, 2004, the ALJ issued his decision finding that Plaintiff was not disabled for purposes of the Act. (AR 16-23.) The decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review by letter dated March 7, 2005. (AR 5-7.)

Thereafter, Plaintiff timely filed this action, and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

Plaintiff was born on July 21, 1967, so he is classified as a "younger individual" under 20 C.F.R. §§ 404.1536 and 416.693. (AR 57.) He has an eleventh-grade education. (AR 57.) From 1992 to 1997, Plaintiff worked as a welder, a medium and semi-skilled job, and as a laborer in a junkyard, a heavy and unskilled job. (AR 77.) Plaintiff apparently has not worked since 1997.

Plaintiff began having physical problems after his involvement in a car accident in November 1988 which resulted in back and right ankle injuries. (AR 172.) The ankle injury eventually lead to fusion surgery in 1992. (AR 172.) In 1998, Plaintiff was found to be disabled under Section 216(I) of the Act; however, those benefits were terminated on November 1, 2000.[1] (AR 148.) Plaintiff now alleges that he was disabled on November 1, 2000, and continues to be disabled due to the combined effects of past surgery, back pain, diabetes, liver problems and high blood pressure. (AR 91, 132-34.)

### A. The Medical Evidence

Plaintiff's medical records indicate that he began seeing Dr. Bowdain Smith on June 6, 1999, for right ankle and leg pain. (AR 210.) Dr. Smith continued to treat Plaintiff through September 25, 2002. Over that time period, Dr. Smith, besides treating Plaintiff's pain symptoms, also diagnosed hypertension. He prescribed various medications including OxyContin, Tylox, Phen, Cardizem and Xanex. (AR 210-44.)

In April 2000, Plaintiff went to the hospital with yellow eyes. (AR 174.) At the hospital, Plaintiff explained that four days earlier he had drunk roughly half a gallon of alcohol which included whiskey and

---

[1] The record does not indicate why Plaintiff's benefits were terminated in 1998.

2

moonshine. Dr. Phillip D. Betram admitted him for treatment and diagnosed probable alcoholic hepatitis and acute jaundice from the combined effect of the alcohol and Tylenol. Dr. Betram also ordered a Hepatitis profile in order to rule out chronic hepatitis C, since Plaintiff in the past had snorted cocaine and received a blood transfusion. (AR 176.)

Between September 2000 and March 2004, Plaintiff received pain-management therapy from the Pain Management Group. (AR 333.) During his first visit in September 2000, Plaintiff reported that his pain ranged from a seven to a ten (on a scale of ten). (AR 333.) He explained that his pain worsened with increased activity, walking and standing, but lessened with decreased activity and hot baths. Dr. William Leone's impressions were right ankle fusion, right lower extremity complex pain syndrome ("RSD") and lower back pain of unclear etiology for which he ordered physical therapy and lumbar epidural steroid injections. (AR 335.) Plaintiff returned to the pain clinic in January 2001, complaining of continued right ankle and back pain. (AR 270.) Plaintiff reported that the cortisone injections were ineffective and that the pain had worsened at the sight of the last injections. Dr. Leone then prescribed OxyContin and Neurontin, but he later discontinued the Neurontin after Plaintiff complained that it caused him headaches. (AR 269.)

In February 2001, Dr. Leone noted that an MRI revealed degenerative disc disease of the lumbar spine for which he ordered a lumbar sympathetic block. (AR 269.) After Dr. Leone performed the block in March 2001, Plaintiff reported having no pain at all which suggested that there was a sympathetic component of the pain and the condition would be treated as RSD. (AR 332.) The next month, Plaintiff reported a 50% reduction in his leg pain with the sympathetic nerve block and pain medications. (AR 268.)

In June 2001, Dr. Leone received a phone call stating that Plaintiff had attempted to sell his Oxycontin to some teenagers at a local school. (AR 266.) Plaintiff denied the allegation. Because this was the first documented report that Plaintiff had been selling his pain medications and Dr. Leone had no reason to disbelieve Plaintiff's denial, Dr. Leone determined that there was insufficient evidence to conclude that Plaintiff was actually misusing his prescriptions. Dr. Leone simply noted that he would do random drug screens in the future. (AR 266.)

In August 2001, Plaintiff was seen by Dr. Audrey Tolbert in addition to Drs. Leone and Smith. (AR 214, .) All three doctors prescribed OxyContin that month. Specifically, on July 8, 2001, Dr. Smith

3

prescribed OxyContin and Glucophage. (AR 214.) On July 9, 2001, Dr. Leone noted that Plaintiff stated that he did not get any pain medication from another clinic and prescribed OxyContin. (AR 263.) Later that month, on July 30, 2001, Dr. Tolbert assessed severe hypertension and chronic pain syndrome ("CPS") and prescribed Labetol and OxyContin. (AR 288.)

By August 2001, Plaintiff reported to Dr. Long at the Pain Clinic that there had been no significant relief from the two sympathetic nerve blocks (see AR 263), although he initially had reported that the blocks substantially reduced his pain (see AR 332). He also reported having a motorcycle accident the previous week, though the medical records do not reflect separate treatment for the alleged accident. At that time, Plaintiff still reported his pain index to be a seven of ten. (AR 261.) Dr. Leone refilled Plaintiff's Oxycontin and Elavil. Also that month, Dr. Smith ordered lab testing which revealed continuing elevated liver enzymes and hyperglycemia. (AR 226-27.)

During September 2001 and October 2001, Plaintiff reported continued leg pain to Dr. Leone who continued to prescribe OxyContin. (AR 261-62.) In November 2001, Plaintiff explained that he had recently been involved in a motor vehicle accident. Dr. Leone refilled the OxyContin and added Oxy-IR. (AR. 259.)

### B. Evidence Relating to Plaintiff's Work Capabilities

In April 2001, Ms. Karen Sexton, P.A.-C., who practices with Dr. Smith, wrote Plaintiff a work excuse explaining that it was difficult for him to work for more than one hour at a time on his feet and that work should be restricted to walking one hour on flat surfaces. (AR 229.)

In a pain questionnaire supplementing Plaintiff's disability report filed in late September 2002, he alleged to be experiencing ongoing leg, foot and back pain. (AR 153.) He further alleged that his daily activities were limited to standing for periods of five to ten minutes. (AR. 154.) In response to the question of how the injury affects his daily ability to care for his personal needs, Plaintiff stated, "I cannot get around very good." (AR 160.)

A Residual Functional Capacity ("RFC") Assessment performed on May 5, 2003, found Plaintiff capable of occasionally lifting 20 pounds and frequently lifting 10 pounds, standing or walking about two hours in an eight-hour work day, sitting about six hours in an eight-hour work day, and having an unlimited ability to push and/or pull. (AR 272.) In the commentary supporting these findings, the consulting physician

4

noted that Plaintiff's alleged disabling conditions included right ankle pain, back pain and RSD. (AR 272.) He also noted that Plaintiff had no manipulative, visual, communicative or environmental limitations. (AR 274-75.) The examiner concluded that Plaintiff has the RFC for light work that permits frequent postural changes. (AR 164.)

### C. Plaintiff's Hearing Testimony

At the Hearing conducted before the ALJ on July 14, 2004, Plaintiff complained of continuing ankle and back pain. (AR 61-62.) He testified that he used medication to treat the back pain, but never had tried physical therapy, a TENS unit or heating pads. His pain level varies, but on most days it is somewhere between a six and seven. (AR 72.) In 2002, he was diagnosed with diabetes which causes tingling and stinging in his hands and feet. (AR 63.) He manages the illness with diet control and intervals of medication. (AR 64.)

Plaintiff claimed that his alcoholic consumption had decreased. (AR 65.) He allegedly no longer drinks liquor and only occasionally drinks beer. (AR 66.) He stated that it has been over a year since he got drunk.

As to his daily activities, Plaintiff explained that he gets a full night of sleep and helps out around the house "a little bit." (AR 67.) His typical chores include grocery shopping, doing laundry and mowing the lawn, which takes him about fifteen minutes on the riding mower. (AR 68.) He spends most of the day watching television. He walks down to the boat docks when the weather is nice. (AR 70.) According to Plaintiff, he can sit for about 30 minutes and walk "like 50 yards." (AR 70.)

### D. Vocational Expert Testimony

Also at the hearing, Ms. Jane Hall, a Vocational Expert, testified about Plaintiff's work capacity. (AR 76-79.) The ALJ presented Ms. Hall with two hypothetical situations. First, he asked whether there were any jobs in the Plaintiff's geographical area that are considered "light work" which do not require frequent stooping, bending, crouching, crawling or kneeling. (AR 77.) Ms. Hall testified there were no jobs available in the "light work" category. Next, the ALJ asked whether there are any available jobs classified as "sedentary" which would allow Plaintiff to "sit and stand as necessary for comfort" but would not require him

5

to "stand or walk for more than an hour during an eight-hour work day."[2] (AR 77.) Ms. Hall testified that with those restrictions Plaintiff could perform the "job [of] a sedentary cashier/ticket seller," "assembler" and "feeder." (AR 77.) In Tennessee, there are 13,000 cashier/ticket seller jobs, 5,000 assembler jobs and 1,600 feeder jobs. (AR 78.) Additionally, in the national economy there are 593,000 cashier/ticket seller, 159,000 assembler and 70,500 feeder jobs. Ms. Hall added, however, that Plaintiff could not work in competitive employment if he would be likely to miss three or more days of work a month as a result of his condition. (AR 79.)

On examination by Plaintiff's counsel, Ms. Hall testified that if Plaintiff's pain was moderate to severe—in addition to the restrictions described by the ALJ—he could not work. But if the pain was only moderate, then he could work. (AR 79.) Lastly, if the pain was at a level that required him to lie down as many as four times a day for 30 minutes to an hour, it would preclude him from working. (AR 79.)

### III. THE ALJ'S FINDINGS

After reviewing Plaintiff's medical history and functional capacity evaluations, the ALJ found that Plaintiff had "severe" impairments including RSD, residuals of right ankle fracture and subsequent fusion, obesity, degenerative dis disease and diabetic neuropathy. (AR 19.) These impairments, however, did not meet nor equate to an impairment listed in 20 C.F.R. Part 404, Subpart P, and Appendix I. (AR 19.) Additionally, he found that Plaintiff's substance abuse is reportedly in remission and therefore imposes no significant, work-related limitations under 20 C.F.R. 404.1521 and 416.921. He found that Plaintiff lacked the RFC to perform any of his past relevant work, but retains the capacity to perform a range of sedentary work provided that he retains the discretion to stand/walk and avoid climbing, balancing and frequent postural activities. (AR 20.) Specifically, he noted Ms. Hall's testimony that Plaintiff is capable and qualified to perform 19,600 jobs in the state economy and some 822,000 jobs nationally. **Based on Plaintiff's age, educational background, work experience and RFC, the ALJ concluded that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the economy and therefore is not under**

---

[2] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met. See C.F.R. § 404.1567(a).

6

a "disability" as defined by the Act. (AR 20.)

In reaching his conclusion, the ALJ considered Plaintiff's subjective complaints of pain and evidence of Plaintiff's ability to control his medical conditions through proper diet and exercise. (AR 20.) The ALJ determined that Plaintiff's subjective complaints of pain were not entirely credible for several reasons. First, the ALJ noted that there were inconsistencies in Plaintiff's expressed treatment preferences. For instance, while Plaintiff testified at the hearing that a steroid injection worsened his pain, the treatment notes show that Plaintiff was "very agreeable" to further injections as recently as March 2003. (AR 20.) Second, notwithstanding Plaintiff's testimony of severe and disabling pain, he retained the ability assist his mother with housework, drive short distances and make regular visits to a local boat dock. Lastly, the ALJ noted that Dr. Sullivan, from the Pain Management Clinic, discharged Plaintiff in early 2004 after confirming that Plaintiff was pursuing narcotic pain medications from multiple physicians, which the medical records clearly corroborate. Based on all of this evidence, the ALJ found that Plaintiff's pain was not as severe as he claimed, and that it is "lessened at least somewhat when following prescribed therapy." (AR 20.)

## IV.  DISCUSSION

### A.  Standard of Review

Review of a Commissioner's finding that a claimant is not disabled within the meaning of the Act is limited to whether that finding is supported by substantial evidence and whether the ALJ applied the proper legal standards. 42 U.S.C. § 405(g) (2004); Mullen v. Brown, 800 F.2d 535, 545 (6th Cir. 1986). The standard for questions of law is *de novo.* Wright v. Comm'r of Soc. Sec., 321 F.3d 611, 614 (6th Cir. 2003). The standard for substantial evidence requires "more than a scintilla, but less than a preponderance." Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). The Commissioner's findings are not subject to reversal merely because the record contains substantial evidence supporting a different conclusion. Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001).

### B.  Evaluation of Entitlement To Social Security Benefits

Title II of the Act provides disability, survivor and retirement insurance benefits. To qualify for those benefits, an individual must meet the following criteria: (1) satisfy the insured status requirements, (2) be

7

under age 65, (3) file an application of disability insurance benefits and (4) be under a "disability."[3] 42 U.S.C. § 423(a); see Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997).

The parties do not dispute Plaintiff's eligibility under the first three requirements, and therefore the issue on this appeal is whether there is substantial evidence supporting the ALJ's finding that plaintiff is not "under a disability." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(a)(1). Further, the mental or physical impairments must be of such severity that the Plaintiff is unable to do his previous work or to "engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. § 423(d)(2).

When applying the standards for determining disability, the ALJ must follow a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 406.920. The Sixth Circuit has summarized the steps as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does not prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters, 127 F.3d at 529; 20 C.F.R. § 404.1520(b)-(f). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden of going forward with the evidence

---

[3] In order to qualify for Supplemental Security Income payments based upon a disability under section 1602 of the Act, an individual must meet identical definitional requirements and his income or resources must not exceed the statutorily specified amounts. See 42 U.S.C. §§ 1381a, 1382, 1382c. Since this Court concludes that the ALJ's finding that Plaintiff is not "disabled" is supported by substantial evidence, it is not necessary to engage in a separate analysis for the Supplemental Security Income payments.

8

at step five to show that alternate jobs in the economy are available to the claimant, considering his age, education past work experience and residual functional capacity. See Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

Plaintiff's contentions focus on step five. Specifically, he argues that he successfully established that he his unable to do any of his past relevant work but that the Commissioner did not carry her burden of showing that there was other work in the economy that he was capable of performing giving his specific functional capacity. More specifically, Plaintiff argues that the ALJ's decision should be reversed because there is not substantial evidence supporting the ALJ's adverse assessment of Plaintiff's credibility regarding his subjective complaints of pain.

### C. Credibility Assessment

Plaintiff contends that the ALJ improperly evaluated his credibility under the standard set forth in Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir. 1986). Under the standard established in Duncan, an ALJ should apply a two-step inquiry when evaluating claimant's subjective complaints of pain: (1) determine whether there is "objective medical evidence of an underlying condition" and (2) determine whether the objective medical evidence confirms the severity of the pain or whether the objectively established medical condition "can reasonably be expected to produce the alleged disabling pain." Id. at 853. When conducting this inquiry, an ALJ may consider the claimant's credibility, and if he deems the testimony unreliable, he may present an independent hypothetical to the VE. See Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 475 (6th Cir. 2003)(citing Walters, 127 F.3d at 531). Because an ALJ has the duty of observing a claimant's demeanor and credibility, his credibility findings are accorded great weight and deference, see Walters, 127 F.3d at 531. This Court generally will defer to the ALJ's conclusions "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Jones, 336 F.3d at 476 (quoting Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Here, the medical evidence reflects ample objective medical evidence supporting Plaintiff's claims regarding his physical impairments. Nevertheless, those disorders do not meet the requirements for finding an automatic disability under the Act, and the ALJ determined that Plaintiff's subjective complaints of pain

9

were not fully credible. This Court's review is limited to whether the ALJ's reasons for discrediting Plaintiff's subjective complaints "are reasonable and supported by substantial evidence in the record." Jones, 336 F.3d at 528.

The ALJ discredited Plaintiff's subjective complaints of pain in light of Plaintiff's testimony about the effectiveness of recent medical treatments and his ability to engage in certain daily activities. Regarding the medical treatment, Plaintiff testified that his more recent impairments have responded to a combination of diet and medication. Moreover, while Plaintiff testified that epidural steroid injections worsened his back and leg pain, treatments notes from Drs. Leone and Sullivan reflect that Plaintiff claimed improved function as a result of injections and was "very agreeable" to further injections. See Chesterfield v. Sec'y of Health & Human Servs., 816 F.2d 678, 1987 WL 37076, at *1 (6th Cir. 1987)(noting that the ALJ is not obligated to credit claimant's testimony where it reflects inconsistences about the efficacy of claimant's medications)(per curium)(unpublished opinion). Additionally, the ALJ properly noted that Plaintiff had engaged in the pursuit of narcotic pain medications from multiple physicians, prompting Dr. Sullivan to discharge him from care at the pain clinic. (AR 20.) This Court finds that the demonstrable discrepancies in the record provide more than substantial evidence to justify the ALJ's credibility determination.

Plaintiff further contends that the ALJ's assessment of his credibility is faulty because it is based on a mischaracterization of Plaintiff's daily activities, which he claims are consistent with disabling pain. Plaintiff's hearing testimony reflects that he is able to assist his mother with housework, drive short distances, swim, mow the grass and regularly visit a boat dock for a few hours at least five times a week. (AR 20.) Household and social activities are proper considerations for an ALJ when evaluating a claimant's subjective complaints of pain. See C.F.R. § 404.1529(c)(3); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 391 (6th Cir. 2004)(holding that the ALJ's credibility determination properly was supported by claimant's testimony that he could care for his own hygiene, vacuum, drive, and wash dishes); see also Walters, 127 F.3d at 531 (noting that the ALJ properly discredited claimant's subjective pain complaints based upon claimant's ability to run errands, walk two miles, prepare his own meals and drive three times a week). While Plaintiff's reported activities alone perhaps are not altogether inconsistent with disabling pain, coupled with the other discrepancies discussed above, they provide further evidentiary basis supporting the ALJ's

10

conclusion that Plaintiff's pain is not as severe and disabling as he alleges.

## V. CONCLUSION

As set forth above, this Court finds that the administrative record contains substantial evidence to support the ALJ's conclusion that Plaintiff had the residual capacity to perform a significant range of sedentary work and therefore was not disabled within the meaning of the Act. Thus, the Commissioner's decision denying benefits will be affirmed. An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge